**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Success Is Yours, Inc., a Florida corporation; Charles Highers, an individual; Lynn A. Hughes, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>LifeSuccess Publishing, LLC, a Nevada limited liability company; Bob Proctor, an individual,<br><br>    Defendants. | No. CV10-0758-PHX DGC<br><br>**ORDER** |

Defendant Bob Proctor moves to dismiss Plaintiffs' claims against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Doc. 18. Plaintiffs oppose and request jurisdictional discovery. Doc. 26; *id*. at 11-12. The motion is fully briefed, and the parties did not request oral argument. Docs. 18, 26, 33. The Court will deny the motion with respect to both Plaintiffs, but allow necessary jurisdictional discovery to be taken by Plaintiff Hughes.

**I.    Background.**

Plaintiffs Success Is Yours, Inc. and Charles Highers (collectively "Success Plaintiffs") are citizens of Florida; Mr. Highers is the President of Success. Doc. 1 at 2. Plaintiff Lynn Hughes is a citizen of North Carolina. *Id.* No relationship is alleged between Hughes and the Success Plaintiffs. *See* Doc. 1.

The Success Plaintiffs purchased franchise rights "to market and solicit sales of custom book publishing products and services" within certain territory in Florida. *Id.* at 3.

1  The franchisor was LifeSuccess Publishing, LLC ("Franchisor"), a Nevada entity with its
2  principal place of business in Scottsdale, Arizona; Franchisor is also a defendant in this case.
3  The Success Plaintiffs allege that Defendant Proctor – Franchisor's chairman and a citizen
4  of Toronto, Canada – made material misrepresentations and concealed material facts, thereby
5  inducing them to enter into the franchise agreement with Franchisor. *Id.* at 2, 5-6; Doc. 18
6  at 2. The Success Plaintiffs paid Franchisor an initial fee of $250,000. Doc. 1 at 7.

7  Plaintiff Hughes purchased similar franchise rights from Franchisor, but the territory
8  in his agreement was within North Carolina. *Id.* at 3. Hughes makes similar allegations
9  against Defendant Proctor. Hughes paid Franchisor an initial fee of $100,000. *Id.* at 7.

10  Plaintiffs' complaint alleges eight counts against Defendant Proctor: (1) fraud in the
11  inducement; (2) negligent misrepresentation and omission; (3) rescission; (4) violation of the
12  Florida Franchise Act; (5) violation of the Florida Deceptive and Unfair Trade Practices Act;
13  (6) violation of the Florida Sale of Business Opportunities Act; (7) violation of the North
14  Carolina Business Opportunities Act; and (8) violation of the North Carolina Deceptive
15  Trade Practices Act. Doc. 1. Most of the claims relate to Defendant Proctor's alleged
16  conduct prior to execution of Plaintiffs' franchise agreements. *See id.*

17  The complaint does not allege that Defendant made the alleged misrepresentations in
18  Arizona, does not allege that Defendant was a party to the franchise agreements, and does
19  not allege the existence of a separate agreement between Plaintiffs and Defendant. *See*
20  Doc. 1. In his motion contesting jurisdiction, Defendant asserts that he "did not meet or
21  communicate in any fashion" with Plaintiff Hughes before the latter executed his franchise
22  agreement. Doc. 18 at 5-6. Hughes does not counter this assertion. *See* Doc. 26. Defendant
23  also asserts that he "did not meet with or communicate" with Plaintiff Highers about the
24  Plaintiff's specific franchise agreement prior to the execution of the agreement. Doc. 18 at
25  5-6. Plaintiff Highers counters by asserting that he met with Defendant Proctor – on a cruise
26  that departed from San Diego – approximately 3 months before the franchise agreement was
27  signed. Doc. 26-1 at 2-3; Doc. 1 at 6. At the meeting, Defendant allegedly "oversold the
28  prospects of success of the franchise, oversold his organization's ability to deliver a

- 2 -

marketable product, . . . misrepresented the then-current state of the franchise opportunity," and made other false representations. Doc. 26-1 at 2-3. Highers also alleges that discussions "continued one week later in . . . Florida." *Id.* at 3. Highers does not allege that the discussion involved his future franchise agreement specifically. *See* Doc. 26-1. Defendant does not deny the cruise meeting, and also admits meeting with Plaintiff Highers at two seminars in Arizona within a couple of months after the franchise agreement was signed. Doc. 18 at 6. Defendant asserts, however, that he did not discuss Plaintiff's specific franchise agreement during any of their meetings. *Id.* Plaintiff Highers does not dispute this assertion. *See* Doc. 26.

Plaintiffs assert that Arizona can exercise both general and specific jurisdiction over Defendant. Doc. 26. Plaintiffs note that each of their franchise agreements sets the exclusive venue for litigating disputes in Maricopa County, Arizona. *Id.* at 2. They also claim that Defendant is "the guiding spirit and driving force behind" the Franchisor, has extensive contacts with Arizona, and controlled the Franchisor's decisions to operate in Arizona and to require Arizona as the dispute-resolution forum. *Id.* at 5, 7, 9, 11; Doc. 26-1 ¶ 3.

Defendant admits that he was in Arizona three times in 2006, four times in 2007, six times in 2008, thirteen times in 2009, and six days in 2010. Doc. 18 at 4. Defendant further asserts that "[o]nly a couple of these occasions was for a time period of over one week and most were for a period of a few days." *Id.* His visits were allegedly for company as well as personal matters, but were not related to the agreements that are the subjects of this suit. *Id.* Defendant also asserts that he has never resided in Arizona, owns no real or personal property in Arizona, and has no bank accounts here. *Id.* Defendant owns a substantial ownership interest in and serves as Chairman of several Nevada Limited Liability Companies that operate and have assets in Arizona, including the Franchisor. Doc. 33 at 3-4.

**II.     Discussion.**

      **A.     Plaintiff Bears the Burden of Proof**.

The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). A district court may allow

- 3 -

1  discovery to determine whether it has personal jurisdiction over a defendant. *See Data*
2  *Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 & n.1 (9th Cir. 1977). A court may also
3  decide the issue on the pleadings, in which case a plaintiff need make only a *prima facie*
4  showing of jurisdictional facts. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267,
5  268 (9th Cir. 1995). Under the *prima facie* burden of proof, the plaintiff must show facts that
6  if true would support personal jurisdiction over the defendant. *See Ballard v. Savage*, 65
7  F.3d 1495, 1498 (9th Cir. 1995).

8  **B.    Personal Jurisdiction Generally**.

9  Plaintiffs' claim to personal jurisdiction over Defendant is Arizona's long-arm statute,
10 Ariz. R. Civ. P. 4.2(a). Doc. 1 at 1. "Because Arizona's long-arm rule confers jurisdiction
11 over non-resident defendants to the fullest extent permitted by the Due Process Clause, [t]he
12 jurisdictional issue . . . hinges on federal law." *Williams v. Lakeview Co.*, 13 P.3d 280, 282
13 (Ariz. 2000) (internal citation and quotation marks omitted).

14 The Due Process Clause requires that non-resident defendants have sufficient
15 "minimum contacts" with the forum state such that the exercise of personal jurisdiction does
16 not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v.*
17 *Washington*, 326 U.S. 310, 316 (1945). The Due Process Clause protects a defendant's
18 "liberty interest in not being subject to the binding judgments of a forum with which he has
19 established no meaningful 'contacts, ties or relations.'" *Omeluk*, 52 F.3d at 269-70 (quoting
20 *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

21 "In determining whether a defendant had minimum contacts with the forum state such
22 that the exercise of jurisdiction over the defendant would not offend the Due Process Clause,
23 courts focus on 'the relationship among the defendant, the forum, and the litigation.'"
24 *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v.*
25 *Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction over a defendant is either
26 "general" or "specific," *see Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408,
27 414-15 nn.8-9 (1984), and the nature of the defendant's contacts with the forum state will
28 determine whether general or specific jurisdiction exists. *See id.*; Ziegler, 64 F.3d at 473.

**C.   General Jurisdiction**.

When a corporation is subject to general jurisdiction in a State, a defendant non-resident officer or director of that corporation may also be subject to general jurisdiction in that State if the corporation is either the *alter ego* or a general agent of the defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (discussing "*alter ego*" and "agency" as bases for deriving general jurisdiction in the parent/subsidiary corporation context); *see also Skydive Arizona, Inc. v. Quattrocchi*, 2009 WL 6597892, at *5-6 (D. Ariz. Feb. 2, 2009) (discussing the *alter ego* analysis in the context of jurisdiction over individual officers and directors).  Here, Plaintiffs stop short of alleging that the Franchisor is the *alter ego* or general agent of Defendant Proctor.  Instead, they assert only that Defendant is the "the guiding spirit and driving force behind" the Franchisor.  Doc. 26 at 5; Doc. 26-1 ¶ 3. This is not sufficient for general jurisdiction.  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520-24 (9th Cir. 1989) (finding derivative specific jurisdiction, but not general jurisdiction, against two individuals who were the sole officers and shareholders of a corporation).

A court may also assert general jurisdiction over a defendant if his activities in the state are "substantial, continuous, and systematic" such that they "approximate physical presence" and would subject defendant to suit even for "matters not arising out of his contacts with the forum." *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co. (Shivnath Rai)*, 284 F.3d 1114, 1123-24 (9th Cir. 2002).  Plaintiffs fail to make a *prima facie* showing of general jurisdiction.  Defendant owns no property in the state, and Plaintiffs have not shown that the 27 occasions during which Defendant visited Arizona during the span of nearly five years are sufficient to give Arizona general jurisdiction.  *See Shivnath Rai*, 284 F.3d at 1125 (being merely a "visitor to the forum" is not sufficient for an assertion of general jurisdiction).

**D.   Specific Jurisdiction**.

**1.   Legal Standard.**

Under the Ninth Circuit's three-part test, specific jurisdiction exists only if (1) the

- 5 -

defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directed conduct at the forum that has effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)); *Burger King*, 471 U.S. at 472-76. While "a person's mere association with a corporation . . . is not sufficient in itself to permit [the corporation's] forum to assert jurisdiction over the person," jurisdiction can be derived over a fiduciary from the corporation's activities if there is a sufficient identity of interests between the corporation and the fiduciary, the corporation is alleged to have perpetrated fraud, or the fiduciary purposely directs his activities at Arizona through the corporation. *See Davis*, 885 F.2d at 520-23.

With regard to the second element of three-part inquiry, the Ninth Circuit has adopted a "but for" test to determine whether a plaintiff's cause of action arises out of a defendant's forum-related activities. *See Omeluk*, 52 F.3d at 271. The "arising out of" requirement is satisfied if the cause of action would not have arisen but for the contacts between the defendant and the forum state. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Finally, a district court presumes that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500. The burden of proof then shifts and the defendant must "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). The Ninth Circuit considers seven factors when determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

1  (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the
2  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative
3  forum. *Shivnath Rai*, 284 F.3d at 1125 (internal citations omitted).

4         The Court concludes that the Success Plaintiffs have shown sufficient facts to
5  establish a *prima facie* case of specific jurisdiction over Defendant Proctor.  Defendant owns
6  a substantial interest in the Franchisor and acts as its Chairman.  The Franchisor's principal
7  place of business is Arizona.  Defendant frequently visits Arizona to conduct the business
8  of the Franchisor, to conduct other business, and for personal reasons.  Defendant personally
9  spoke with Plaintiff Highers on several occasions and encouraged him, allegedly through
10 false representations, to enter into a franchise relationship.  Defendant knew that any such
11 relationship would include a franchise agreement with the Arizona operation of Franchisor.
12 The actual franchise agreement required that the Success Plaintiffs litigate any disputes with
13 the Franchisor in Arizona.

14        These facts, if proved as true, will show that Defendant Proctor purposefully availed
15 himself of the privileges of conducting business and personal activities in Arizona, thereby
16 invoking the benefits and protections of its laws, and purposely engaged in communications
17 with the Success Plaintiffs that had the effect of directing them to the Arizona office of the
18 Franchisor.  The claims asserted by Success Plaintiffs arose out of Defendant's
19 communications with Highers, and but for those communications the Success Plaintiffs
20 would have no claim against Defendant Proctor.  Moreover, Defendant has not shown that
21 requiring him to litigate in Arizona – a state where he does business and visits frequently –
22 would be unreasonable.  Accordingly, the Success Plaintiffs have made a *prima facie* case
23 for personal jurisdiction over Defendant in Arizona.

24        Plaintiff Hughes does not clearly set forth facts showing that his claims arise out of
25 Defendant's forum-related activities.  He has not provided evidence, as has Highers, of
26 specific communications with Defendant Proctor regarding a possible franchise relationship.
27 The Court cannot conclude that Hughes has made a *prima facie* showing of personal
28 jurisdiction.

### 2. Jurisdictional Discovery in This Case.

A district court has broad discretion to "permit discovery to aid in determining whether it has in personam jurisdiction." *Data Disc*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). A court should allow a party to conduct discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Wells Fargo*, 556 F.2d at 430 n.24 (citation and alteration omitted). Denying jurisdictional discovery where further discovery might demonstrate a basis for jurisdiction is an abuse of discretion. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (concluding that the district court abused its discretion in denying plaintiff's motion for jurisdictional discovery and remanding the case to allow plaintiff the opportunity to develop the record and make a *prima facie* showing of jurisdictional facts).

Plaintiff Hughes has requested jurisdictional discovery to make a more satisfactory showing. Doc. 26 at 11-12. Accordingly, limited discovery is granted as stated below.

**IT IS ORDERED**:

1. Defendant Proctor's motion to dismiss (Doc. 18) is **denied** with respect to the Success Plaintiffs and **denied without prejudice** with respect to Plaintiff Hughes.

2. Plaintiff Hughes' request for jurisdictional discovery (Doc. 26 at 11-12) is **granted**. This discovery shall be limited to 7 requests for production of documents, 10 interrogatories, and 2 depositions.

3. By **December 8, 2010**, Plaintiff Hughes shall file a memorandum, not to exceed 10 pages in length, setting forth the factual basis for personal jurisdiction over Defendant Proctor. Defendant shall file a response, also limited to 10 pages, by **December 17, 2010**. No reply shall be filed. The parties shall contact the Court's chambers and advise it when the briefing is completed.

1  4. The Court will set a case management conference by separate order.

2  DATED this 21st day of October, 2010.

*David G. Campbell*
United States District Judge